IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII LABORERS' TRUST FUNDS; et al., | CIVIL NO. 13-00320 SOM/KSC |
| Plaintiffs/Counterclaim Defendants, | ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM |
| vs. | |
| IGD HOSPITALITY INC., | |
| Defendant/Counterclaim Plaintiff. | |
| IGD HOSPITALITY INC., | |
| Defendant/Third Party Plaintiff, | |
| vs. | |
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 368; et al, | |
| Third Party Defendants. | |

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**

**I.      INTRODUCTION.**

On June 27, 2013, Plaintiff Hawaii Laborers' Trust Funds ("the Trust Funds") filed a Complaint in this court against Defendant IGD Hospitality, Inc., alleging that IGD had failed to pay employee benefits owed under the terms of a collective bargaining agreement between IGD and the Laborers' International Union of North America, Local 368, AFL-CIO ("the Union").  In response, IGD filed a Counterclaim against the Trust Funds and a

Third-Party Complaint against the Union, alleging that the Union and the Trust Funds had conspired to misclassify workers they sent to IGD for a construction project, and that this misclassification led to overpayment of both wages and employee benefits.

The only issue before the court on the present motion is the sufficiency of IGD's Counterclaim against the Trust Funds. Because IGD's allegations go only to conduct on the part of the Union and of a certain trustee who is not alleged to have been acting in a trustee capacity, almost all of IGD's allegations against the Trust Funds fail to state a claim. The only claim IGD brings for which the lack of specific allegations against the Trust Funds is not fatal is the claim for unjust enrichment; that claim is predicated on the allegedly wrongful retention of a benefit, not on wrongful conduct by the Trust Funds. However, IGD's claim for unjust enrichment, whether characterized as one under state law or federal common law, is preempted by the Employee Retirement Income Security Act ("ERISA"). The court therefore grants the Trust Funds' motion to dismiss all claims asserted in IGD's Counterclaim.

**II.      BACKGROUND**

On May 2, 2012, IGD entered into a collective bargaining agreement with the Union that incorporated a Master Labor Agreement ("MLA") for Hawaii's construction industry and

2

various agreements creating the Trust Funds.  Complaint ¶ 6, ECF No. 1.  The MLA sets forth the hourly wage and benefits contributions that an employer must pay to workers when they are performing work covered by the MLA.  Id.  Workers are categorized, based on their skill and experience level, as "Laborer 1," "Laborer 2," or "Apprentice."  Counterclaim ¶ 8, ECF No. 6-1.  The amount an employer owes in wages and benefits varies with the category of worker it hires on a particular project.  Id.  For example, for a "Laborer 2," an employer must pay a wage of $28.70 per hour and benefit contributions of $16.28 per hour.  Id. ¶ 11.  However, for an "Apprentice," the employer must pay an hourly wage of only $15.15, and is obligated to pay Health and Welfare benefits amounting to only $5.60 into the Trust Funds.  Id. ¶ 14.  IGD states that an "Apprentice" seeking to become qualified as a "Laborer 2" is required to successfully complete an evaluation course, have a minimum of 145 hours of class room instruction, and have "2 years/4000 hours of on-the-job training."  Opp. at 5, ECF No. 15.

In September 2012, IGD entered into a contract with a construction firm to perform renovations of a hotel on Maui.  Counterclaim ¶ 4, ECF No. 6-1.  The project used Union labor, and it appears that it was the Union's responsibility to send IGD construction workers of a particular classification when requested.  Id. ¶¶ 9-10.  IGD alleges that the Union, through

Leimomi Johnson--the Union's Field Representative and Organizer on Maui, id. ¶ 9--provided IGD with workers who had "no prior work experience, no training, and no classroom instruction, or work certifications," and "purposefully misrepresented" them as being in the Laborer 2 category when, at most, they should have been in the Apprentice category. Id. ¶¶ 15, 40. IGD alleges that there were approximately forty misclassified workers on the renovation project. Id. ¶ 35.

IGD further alleges that Johnson approached painters and flooring workers employed on the hotel renovation who were members of other unions and told them that "if they paid the Union a $600.00 membership fee, [] they could become Union members and [be] hired back on the same [p]roject . . . at rates significantly higher . . . [than] they were receiving from IGD under the current pay scale at their present unions." Id. ¶ 16. IGD alleges that, after this fee was paid, the painters and flooring workers were also put by the Union in the Laborer 2 category and placed in construction roles they were unqualified for. Id. ¶ 21.

IGD alleges that many of the assigned workers "could not perform the job duties for [their] classification," id. ¶ 22, and that these workers, upon questioning, admitted that Johnson had never inquired about their qualifications. Id. ¶ 29. IGD

4

states that, upon discovering their lack of qualifications, it terminated the allegedly misclassified workers.  Id. ¶ 33.

IGD alleges that "the Trust Funds knew about this misclassification by the Union and conspired with the Union to condone [it]."  Id. ¶ 45.

IGD claims that it "reasonably relied upon the Union's, the Trust Funds', and Johnson's representations [regarding worker classification] . . . in making [] contributions to the Trust Funds."  Id. ¶ 41.  IGD alleges further that, had the misclassified workers been properly designated, the only benefits "the Trust Funds would be entitled to assess and collect from IGD would be the Health and Welfare benefit." Id. ¶ 42.  Thus, IGD alleges that "misrepresentation, and fraud by the Union (in collaboration with the Trust Funds), has resulted in a gross over statement and overpayment . . . to the Trust Funds of contributions and benefits."  Id. ¶ 43.  As a result, IGD maintains that it, rather than the Trust Funds, is owed restitution under the contract.

### III.      JURISDICTION.

This court has jurisdiction over the Trust Fund's deficient payment claims under ERISA's civil enforcement provisions,  29 U.S.C. 1132(e), and has jurisdiction over IGD's RICO counterclaim under 18 U.S.C. § 1964(a).  This court

exercises supplemental jurisdiction over IGD's state law counterclaims.  See 28 U.S.C. § 1367.

**IV.         RULE 12(b)(6) STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, review is generally limited to the contents of a complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However,

6

conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  The court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

7

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

**V.       ANALYSIS.**

Although IGD's Counterclaim does not clearly set forth IGD's claims, the parties appear to agree that the following violations are alleged: fraud and intentional misrepresentation; breach of contract; tortious inference with business and employment relations; civil conspiracy; unfair and deceptive trade practices; racketeering in violation of the federal RICO statute; unjust enrichment; negligence, contributory negligence, and gross negligence; abuse of process; extortion; malicious prosecution; harassment; breach of fiduciary duty; and breach of covenant of good faith and fair dealing.  In its opposition to the Trust Funds' motion to dismiss the Counterclaim, IGD agrees to voluntarily withdraw its claims for malicious prosecution and harassment, and the court therefore deems those claims dismissed. Opp. at 28, ECF No. 15.

### A. All Claims Predicated on the Trust Funds' Role in the Misclassification of Workers Fail to State a Claim.

Aside from IGD's unjust enrichment count, all of IGD's claims require it to allege some wrongful conduct on the part of the Trust Funds. The gravamen of the Counterclaim is the alleged conspiracy between the Union and the Trust Funds to misclassify workers, and thereby overcharge IGD. However, IGD does not allege a single fact that implicates the Trust Funds *qua* Trust Funds. Instead, IGD's allegations relate exclusively to the conduct of Johnson, acting in her capacity as Field Organizer for the Union. The Ninth Circuit has been unequivocally clear that, "As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement. Trust authorities set up pursuant to section 302 of the LMRA have long been held to constitute a distinct and independent entity separate from the union that negotiates the collective bargaining agreement establishing a trust." Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1507 (9th Cir. 1986). See also Waggoner v. Dallaire, 649 F.2d 1362, 1368 (9th Cir. 1981) ("Trust authorities set up pursuant to section 302 of the LMRA have long been held to constitute a distinct and independent entity separate from the union that negotiates the collective bargaining agreement establishing a trust. . . . Moreover, all funds in trust must be

used for the sole and exclusive benefit of employees. Thus, the fund is no way an asset or property of the union.") (internal quotation omitted).

"[T]he distinct juridical personality of an entity is not merely a legal nicety.  Unless there is strong evidence to the contrary, we must conclude that such boundaries were intended to have some meaning, and they are not to be casually disregarded."  Berger v. Iron Workers Reinforced Rodmen Local 201, 852 F.2d 619, 621 (D.C. Cir. 1988).  IGD points to no reason that the Trust Funds should be held liable for alleged conduct by Johnson or the Union.

While Johnson is a trustee of two of the Plaintiff Trust Funds, there is no allegation that Johnson was acting in her capacity as trustee, or as a fiduciary or administrator, of a trust when she allegedly misclassified the workers.  Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) ("[O]nly when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration, does a person become a fiduciary [of an ERISA trust].").  There is no allegation that any other trustee even knew of Johnson's alleged actions, let alone that the Trust Fund as a whole ratified her conduct.  In other words, Johnson's alleged "actions were those of a Union [official] . . . rather

than those of a Funds Trustee." NLRB v. Constr. & Gen. Laborers' Union Local 1140, 887 F.2d 868, 871 (8th Cir. 1989).

Once the specific allegations against Johnson and the Union are removed from the equation, all that remains regarding the Trust Funds in IGD's Counterclaim are conclusory statements that the Funds "collaborated" and "conspired" with the Union and Johnson. But those statements are legal conclusions, not factual allegations. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. IGD wholly fails to allege "the who, what, when, where, and how of the [alleged conspiracy]." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). To the extent IGD fails to adduce facts indicating independent wrongdoing by the Trust Funds or by any trustee acting in a trustee capacity, the bare allegation that the Trust Funds or any trustee had knowledge of and conspired in Johnson's actions is insufficient. A conspiracy charge is not a talisman that allows plaintiffs to join Defendants against whom there are no specific allegations.

IGD argues that "[t]he fact that [its] Counterclaim does not set forth specific facts as to the relationship between Johnson or any other person and [the Trust Funds] is not fatal to IGD's Counterclaim." Opp. At 13, ECF No. 15. In support of this assertion, IGD quotes extensively from a 1971 Hawaii Supreme

Court case, Hall v. Kim, 53 Haw. 215, 491 P.2d 541, 542 (1971), which itself relies on now-overruled language in Conley v. Gibson, 355 U.S. 41 (1957).  In particular, IGD relies on the notion that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 45-46.  As the Supreme Court has pointed out, "[o]n such a focused and literal reading of Conley's 'no set of facts' [language], a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007).  That description precisely captures what IGD purports to do here: without any factual allegation linking the Trust Funds to the alleged wrongdoing, IGD simply asserts that the Trust Funds were somehow implicated in a conspiracy against IGD.  That is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" that does not permit this court to "draw the reasonable inference that the [Trust Funds are] liable for the misconduct alleged."  Iqbal, 556 U.S. at 677-678.

       Because almost all of IGD's litany of claims against the Trust Funds arise out of allegations against Johnson and the Union, and not against the Trust Funds themselves or against

trustees acting in a trustee capacity, this court sees no reason to individually assess each claim.  Every claim, aside from the unjust enrichment count, is deficient for the same reason--it seeks to attribute liability to the Trust Funds for conduct undertaken by third parties that can neither be traced back to nor imputed to the Trust Funds.  Therefore, aside from the unjust enrichment claim, all claims brought by IGD against the Trust Funds are dismissed for failure to state a claim.

### B.   IGD's Unjust Enrichment Claim

"[A] claim for unjust enrichment requires [only] . . . that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust."  Durette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 504, 100 P.3d 60, 74 (2004).  Therefore, to state a claim for unjust enrichment, IGD is not required to demonstrate that the Trust Funds themselves engaged in any wrongful act; IGD need only allege that the Trust Funds' retention of funds obtained through allegedly wrongful acts by Johnson and the Union would be unjust.

Whether or not IGD has pled facts sufficient to state a valid claim for unjust enrichment, "ERISA preempts any state claim for the restitution of contributions made after January 1, 1975."  Chase v. Trustees of W. Conference of Teamsters Pension Trust Fund, 753 F.2d 744, 746 (9th Cir. 1985).  See 29 U.S.C.

§ 1144 ("[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described.").

Even if IGD's claim for unjust enrichment derives not from state law but from federal common law, the Ninth Circuit "has not recognized any such federal common law action for restitution in favor of employers." British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund, 882 F.2d 371, 377 (9th Cir. 1989). Instead, in this circuit, an employer must bring its restitution claims under section 403(c)(2)(A) of ERISA, which governs situations in which employer contributions are made "by a mistake of fact or law." 29 U.S.C. § 1103(c)(2)(A). See Alaska Trowel Trades Pension Fund v. Lopshire, 103 F.3d 881, 885 (9th Cir. 1996) ("We have recognized an implied right to recover mistaken payments to a trust fund pursuant to § 403(c)(2)(A) of ERISA. The right to a refund is not automatic, however, even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution."). There is therefore "no basis for [an unjust enrichment] action . . . where [the Ninth Circuit] allow[s] employers to bring suit under ERISA for restitution of mistaken contributions." British Motor Car Distributors, 882 F.2d at 377. See also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) ("ERISA's carefully crafted and detailed

14

enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.") (internal quotation omitted).  IGD's unjust enrichment claim is therefore preempted by ERISA.

Because the court has dismissed all of IGD's claims, it need not address the Trust Funds' multiple other grounds that the Counterclaim should be dismissed, including the argument that IGD's other state law claims are also preempted by ERISA.

Nor does the court express any opinion as to whether IGD's allegations against Johnson and the Union may be successful as an affirmative defense against the Trust Funds' collection action, a question that would only properly be before this court if IGD were to file an appropriate motion to dismiss the Trust Funds' Complaint.

At the hearing on the present motion, counsel for IGD indicated that he agreed with the court's inclination that IGD's unjust enrichment claim needed to be brought under section 403(c)(2)(A), and that the Counterclaim did not contain allegations sufficient to state any other claim against the Trust Funds.  IGD's counsel asked that IGD be granted leave to amend its Counterclaim.  Because IGD may bring a restitution claim under section 403(c)(2)(A) of ERISA, and because this court cannot say that IGD will be unable to plead specific factual allegations against the Trust Funds in a future Counterclaim,

this court grants IGD's request.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) ("Rule 15's [instruction that] leave [to amend] shall be freely given . . . [should] be applied with extreme liberality.").

However, the court stresses that if IGD intends to bring any of the claims asserted in the original Counterclaim, it must provide considerably more factual detail regarding any allegedly wrongful conduct on the part of the Trust Funds. Moreover, even if IGD can allege sufficient facts in support of its state law claims, it should seriously consider whether such claims are viable in the face of ERISA's expansive preemption provision.  See Paulsen v. CNF Inc., 559 F.3d 1061, 1082 (9th Cir. 2009) (discussing the scope of ERISA's preemption of state law that "has either a 'connection with' or 'reference to' [an employment benefit] plan").

**V.      CONCLUSION**

The Trust Funds' motion to dismiss is granted as to all claims alleged in IGD's Counterclaim.  IGD is given leave to file an amended Counterclaim no later than December 27, 2013.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 13, 2013.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawaii Laborers Trust Funds, et al v. IGD Hospitality, Inc.; IGD Hospitality, Inc. v. Laboreres' International Union of North America Local 368, et al; Civ. No. 13-00320 SOM/KSC; ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM